King, J.
This case comes into this court on appeal from the common pleas court of this county. The action is brought by Joseph Keating to foreclose a mechanic’s lien, and to establish the amount, validity and priority of mechanics’ liens as well as certain mortgages.
The plaintiff was a sub-contractor, who did the mason work under a contract with the defendant, Michael Weibel, the principal contractor, and the other lienors are material and labor men who furnished material and labor for Michael Weibel, the principal contractor, and upon the building in question. The evidence in the case establishes, without contradiction, the following facts:
That the defendant, Lena Donahue, was the owner of a lot in Toledo, and her husband, Michael Donahue, desired to erect thereon a building to be used as a residence and store room. Having no money to pay for the building, he applied to the defendant, The Mutual Aid Building & Loan Company, by a written application, dated May 15, 1893, to which he signed the name of Lena Donahue and of Michael Donahue, and in this case, so far as Michael has acted, he has acted as the agent of his wife. The application for a lean was referred by the Loan Company to a committee to examine the property, and the committee made a report in writing, finding that the lot was worth .$750; that it was proposed to erect a building thereon worth about $2,600,and they recommended that the loan be made to the amount of $2,200. This application and report was then referred tc the attorney of the corporation, who on June 15, a month after the original application was signed, reported that the title of the property was all right, and on June 15, 1893, Michael Donahue andjiiswifej executed to the Loan Com *655 pany a mortgage upon these premises for the sum of $2,200, the mortgage reeiting that the money has been paid, and is, in the mortgage, receipted for. It was, however, outside of the mortgage, the understanding of the parties that it should not all of it be then paid. On the 20th of May, five days after the application to the Lean Company had been made, and probably after Donahue had received an assurance that the Loan Company would let him have the money, he entered into a contract with Michael Weibel to erect and complete the building in question for the sum of $2,698, to be payable in installments as the work progressed. On June 15th the first installment became due on this contract, that, by the terms of it being payable when the cellar walls should be up ready to receive the superstructure. And on this day, as uefore stated, the Building & Loan Company received the mortgage, and on that day advanced and xiaid on account of their agreement to loan, the sum of $23.60 to Mr. Donahue, and on his order, paid to Weibel, the contractor, $500, making the total sum of $523.60.
On the 24th day of July, a second installment became due to Michael Weibel on the contract, and the Loan Company were again called upon to make a payment. Before making a second payment, they required that the owner and Weibel, the contractor, should execute a x')aPer setting forth the material conditions of the contract between them, and on the part of Weibel waiving any right to a mechanic’s lien. This having been signed both by Donahue and Weibel, the Loan Company on that day paid directly to Donahue $56, and to Weibel, on the order of Donahue, $600, making on that day $656, or a. total amount up to this date of $1,179.60.
On August 8, they paid to Donahue directly $28 more, making the total amount advanced on account of the loan $1,207.60, and then leaving to be yet advanced, $992.40. It appears that of the $600 paid to Weibel $550, went directly to the defendants, Chesbrough Bros., and this was with the knowledge of the Loan Company. Chesbrough Bros, had furnished some lumber towards the erection of the building, and had an account for it amounting to about $550; but the contractor, Weibei, was indebted to them in an amount of more than $600 for materials furnished to other buildings.
On August 22, 1893, the building was nearly completed. The work then remaining to be done was afterwrds performed at a cost of $117.55. At this date the work came to a standstill, and Weibel was unable to pay his men,and they refused to work until paid. The material men were also demanding *656 their pay; the Loan Company was also insisting that as it appeared that Donahue would have to borrow more money in order to pay the contract price, that he should make such arrangement, which must in any event be subsequent to the lien of the Loan Company, and which would release the contract to the extent of the difference between the' amount to be furnished by the Loan Company, and the amount of the contract, which, including certain small sums advanced to Donahue, was said to be about $600.
Donahue undertook to borrow that amount of money, but could find no one willing to loan it and take a mortgage subject to the Loan Company’s mortgage, until after some talk, Weibel had arranged with Chesbrough Bros, to accept from him, Weibel, as a payment of his indebtedness to them a mortgage for $600, to be given by Donahue subject to the mortgage of the Loan Company, and which mortgage Weibel was willing to accept as a payment to him on the contract of $600. Accordingly Donahue and his wife gave the note and mortgage for $600 to Weibel, who transferred it to Chesbrough Bros. At this time, August 22, the third installment, amounting to $800, was past due. The work required to be performed in the contract before it was due had been completed, and some additional. No liens had been filed, no notice had been served of an intention to procure liens, although Donahue knew that the labor men, many of them, had not been paid, but he gave the mortgage and note to satisfy his contract with Weibel to the extent of $600, and because the Loan Company had so far refused to advance any more money until some arrangement should be made having this effect. Thereupon Donahue and Weibel went to the office of the Loan Company. What took place there, is in dispute.
We find from the evidence that a Mr. Schmidt was the secretary of the Loan Company, and was in the office at the time when Donahue and Weibel came. That Donahue and Weibel informed him that the $600 that had been previously spoken about had been arranged for. That Chesbrough Bros, had taken the mortgage. Thereupon Schmidt telephoned to the office of Chesbrough Bros., who responded to the effect that they had done so. Schmidt on the witness stand claims that he had misunderstood both the conversation and the telephone. That it was his understanding at the time that Chesbrough Bros, had taken a mortgage and had advanced $600 to Donahue, and he supposed that Weibel had had the benefit of $600 in money. There does not appear in the evi *657 dence any reason for that misunderstanding. But it is not deemed material. Schmidt had been insisting that Donahue should take care of the contract to the extent of $600, and the effect of the mortgage made to Weibel and transferred to Chesbrough Bros., was to do exactly that.
We conclude as a matter of law, that the mortgage was made and accepted by Weibel as a payment upon his contract. That Donahue had right to make it in that way, and Weibel a right to accept it, and the mortgage is valid in the hands of Chesbrough Bros., but will be subject to the mortgage of the Loan Company. .
We further find that when Donahue and Weibel were in the office of the Loan Company, Donahue informed Schmidt that the laboring men had not been paid, and that they were insisting on their pay, and that he should pay to Weibel on account of the contract, all the money that was coming to him, Donahue, except about $100. That he should keep back that sum in order to insure the completion of the work yet to be done bv Weibel, but that all the balance should be paid over to Weibel. Schmidt replied that the Loan Company had no money but would have some soon. And thereupon Donahue went away. After he had gone, Schmidt said to Weibel, who had remained, that as he, Weibel, was indebted to the Western Manufacturing Company, who had furnished a large amount of lumber for this building that he might give the Western Manufacturing Company an order on the Loan Company, or ha might say to them that the Loan Company would hold for the Manufacturing Company $600 of this money, and that the matter could be arranged between the two corporations. In this connection it should be stated that Mr. Puck is the president of the Loan Company, of which Schmidt was the secretary, and was also secretary and treasurer of the Western Manufacturing Company. Weibel proceeded to find Mr. .Puck, gave him the information which Schmidt had given him,and Puck informed him that he desired that in writing. Weibel went back and saw Schmidt, who gave him the paper, which reads as follows:
“We will hold six hundred dollars for your ac’t. Lena Donahue and Michael Weibel. The Mutual Aid Building & Loan Company. Theo. Schmidt, Secretary.”
There is no date upon it. It is written on the back of a blank deposit slip. This paper, which is simply an assurance that the Loan Company will hold $600 ‘for your account”, is addressed to nobody, and, standing alone, its *658 meaning would not be plain. Mr. Weibel gave this paper to Mr. Puck, who, in a few days returned it to the Loan Company. It was net acted upon or paid by the Loan Company until about a month later. The Western Manufacturing Company gave nothing for it, and did not in any respect change their position.
Two or three days later than this, possibly on the 26th or 27th of August, Donahue finding that the laboring men were not paid, that they refused to go on with the work, and that nothing was being done to the building, went again to the office or the Loan Company, and found in charge a bookkeeper. Mr. Schmidt was not there, and he said to the bookkeeper: “Don’t you pay that money to Weibel.” The bookkeeper does not appear to have made any response to this.
On the 28th of August, the plaintiff, and some of the other laboring and material men .filed the liens involved in this case, and Mr. Donahue went again to the office of the Loan Company and said to the man in charge — Donahue says it was Schmidt, but Schmidt denies that he was present —that they must not pay that money or any more money to Weibel, and the man in charge replied “We have paid it.” As I have before stated, they had paid nothing and did not pay until later. It is now claimed by the Loan Company that they should be entitled to a credit of $600 as advanced upon this loan, which they afterwards paid to the Western Manufacturing Company, and that the lienors are not entitled to any claim upon the money as a fund in their hands. We dc not think this claim can be upheld. It does not appear that Donahue was negligent in anyway. He ordered the secretary to pay the amount due upon his contract to the contractor. If the secretary had obeyed that order, and the contractor had himself applied the money, the Loan Company would not have been responsible for that, but the Loan Company did not pay the contractor. They made an arrangement by which they should pay at some time another corporation, with which Donahue had no relation. So far as the evidence shows, Donahue did not know that Weibel was indebted to several workmen, and he had insisted that the money to be advanced to him by the Loan Company should be paid over to Weibel to satisfy the claims of these workmen. This he had said to the secretary of the Loan Company. He gave the Loan Company no direction to do anything with his money, except to pay it to Weibel. In this situation of the parties, we must hold that the assumption by the Loan Company of an_obligation topq,y the Wes *659 tern Manufacturing Company $600, and winch they did not pay until-about a month later, was unauthorized by Donahue, who had the sole right to direct the payment of this money, upon which he was paying interest for its use, to the Loan Company. '
R. S. Holbrook, Attorney for Plainitff.
E. W. Tolerton, Attorney for Chesbrough Bros.
' W. J. Gill, Attorney for M. Donahue.
And we conclude that the Loan Comnany still has the amount that it agreed to loan Donahue, the sum of $992.40, out of which the lienors have agreed there should be paid the amount necessary to complete the building to the extent of $117.55, leaving in t,he hands of the Loan Company for the use of Donahue, the sum of $874.85, with interest on the same from the date when it ought to have been paid to Donahue, September 20, 1893, which amount and interest to the date of payment the Building & Loan Company are ordered to pay into court.
We find that at the date when payment was stopped, and this trouble arose, there was due Weibel on, his contract the sum of $867.95 from Donahue.
That the plaintiff and the other lienors are entitled to liens, the amount and priority of which, the parties can arrange among themselves, «s there has been before us no dispute as to the amounts and priorities. That these lienors are entitled to liens upon the building and premises of the defendants, Michael and Lena Donahue, to the amount and for the sum that is remaining unpaid on the contract to the principal contractor, and which liens will be extinguished from the money paid into court, as hereinbefore required. And from which money, when paid in, there will be first paid the costs incurred in this action in the court of common pleas, and the balance shall be paid to the lienors, except that from the amount found due the plaintiff, there shall be repaid to Michael Donahue the sum of $5 0, that being the sum agreed upon between the plaintiff and Michael Donahue for some alleged defects in that portion of the work performed by the plaintiff.
We, further find that the costs of the trial in this ' court shoulá be paid by the defendant, the Mutual Aid Building &Lcan Company; that under the contract they are entitled to an allowance for attorney’s fees the sum of $30. We disallow this claim on the ground that they were not entitled to foreclose their mortgage, that Donahue was notin default, and the conditions had not happened upon which any sucb jjrovision in the mortgage would become operative.